UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,            :
                                     :
                 Plaintiff,          :
                                     :       CIVIL ACTION
          v.                         :       No.  11-1098-SAC-KGS
                                     :
ANGEL DILLARD,                       :
                                     :
                 Defendant.          :

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE
UNITED STATES OF AMERICA
FOR PRELIMINARY INJUNCTIVE RELIEF**

In an effort to intimidate Dr. Mila Means to not provide abortion services in Wichita, Kansas, the defendant, Angel Dillard, sent Dr. Means a letter which threatened to prevent her from performing abortions "by any means necessary."   The letter contained other threats and made references to Dr. George Tiller.   Dr. Tiller was murdered in Wichita less than two years ago because of his abortion medical practice.

The United States of America (the "United States") has moved the Court for an Order preliminarily enjoining Defendant, Angel Dillard, from contacting Dr. Mila Means via letter, email, phone call, or any other form of communication; preliminarily enjoining Defendant and her representatives, agents, employees and any others acting in concert or participation with her, from coming within 250 feet of Dr. Means, her home, car, and place of business; and preliminarily enjoining Defendant and her representatives, agents, employees and any others acting in concert or participation with her, from violating the Freedom of Access to Clinic Entrances Act.

## I.      RELEVANT BACKGROUND AND STATEMENT OF FACTS

On May 31, 2009, reproductive healthcare provider Dr. George Tiller was shot in his church and killed by anti-abortionist Scott Roeder.  See Declaration of Dr. Mila Means ("Means Decl."), attached as Exhibit 1, ¶ 4.  Scott Roeder was convicted of first-degree murder and sentenced to life without parole.  Id. ¶ 5.  Defendant, Angel Dillard, who is active in the anti-abortion community, has corresponded with Scott Roeder during his incarceration.  Id. ¶ 9.

Since Dr. Tiller's murder, no physician has openly performed abortions in Wichita.  Id. ¶ 6.  Dr. Mila Means is a family practitioner in Wichita who is training to provide abortion services to women in Wichita.  Id. ¶¶ 1-2.

On or about January 15, 2011, Defendant mailed a letter to Dr. Means in an attempt to intimidate her and prevent her from performing abortions in Wichita.  Defendant's letter contains several statements that independently and taken together constitute a threat, including:

> I urge you to think very carefully about the choices you are making. . . . We will not let this abomination continue without doing everything we can to stop it.

> Maybe you don't realize the consequences of killing the innocent.  If Tiller could speak from hell, he would tell you what a soulless existence you are purposefully considering, all in the name of greed.

> Thousands of people are already looking into your background, not just in Wichita, but from all over the US.  They will know your habits and routines.  They will know where you shop, who your friends are, what you drive, where you live.  You will be checking under your car everyday-because maybe today is the day someone places an explosive under it.

Defendant signed the letter "Angel Dillard," and sent the letter in an envelope with a pre-printed return address sticker with Defendant's name and address.  See Letter from Angel Dillard to Dr. Mila Means ("Dillard Letter"), attached as Exhibit 2.

2

Defendant's letter intimidated Dr. Means and caused her to undertake numerous security measures.  Among those measures were the following:  having her car examined by a mechanic; parking only where her car is visible to her; installing a home alarm; staying overnight at different locations; varying her route to and from work and home; filing police reports; requiring new patients to provide ID; and looking for a more secure building in which to practice.  Means Decl. ¶¶ 10-11.

Defendant's conduct intimidated Dr. Means, and Defendant engaged in this conduct with the intent to intimidate.  Defendant has publicly committed to preventing the delivery of abortion services in Wichita, What's the Matter with Kansas? (Ow Myeye Productions Inc. 2010); publicly acknowledges her relationship with Scott Roeder, Suspect in Abortion Doctor George Tiller Slaying Says Such Killings Justifiable, July 4, 2009, http://www.myfoxdetroit.com/dpp/news/national/Suspect_in_Abortion_Doctor_George_Tiller_S laying_Says_Such_Killings_Justifiable_29261227; and poses a risk of continued threats to Dr. Means in order to intimidate her.  Therefore, Defendant should be enjoined from violating FACE.

## II.  LEGAL DISCUSSION

### A.  Standard for Preliminary Injunction

Defendant's letter constitutes a threat of force in order to intimidate Dr. Means from providing reproductive health services.  The United States has the authority – and indeed the duty – to commence this action seeking preliminary and permanent injunctive relief.  See 18 U.S.C. § 248(c)(2)(B).

It is well-settled that a party is entitled to preliminary injunctive relief if the party demonstrates:

> 1.      a likelihood of success on the merits;
>
> 2.      a likelihood of irreparable harm to the movant in the absence of preliminary relief;
>
> 3.       that the balance of the equities tips in the movant's favor; and
>
> 4.       that granting the relief is in the public interest.

Attorney General of Oklahoma v. Tyson Foods, Inc., 565 F.3d 769, 776 (10th Cir. 2009).

**B.      The United States has satisfied the standards for preliminary injunctive relief**

**1.      The United States has a substantial likelihood of success on the merits.**

Defendant's conduct clearly constitutes a violation of FACE, which makes illegal, among other things, threats of force designed to intimidate any person from providing reproductive health services.  18 U.S.C. § 248(a)(1).   A threat of force, or "true threat," is a "declaration of intention, purpose, design, goal or determination to inflict punishment, loss, or pain on another, or to injure another or his property by the commission of some unlawful act."  Nielander v. Bd. of County Commissioners, 582 F.3d 1155, 1167 (10th Cir. 2009) (quoting United States v. Viefhaus, 168 F.3d 392, 395 (10th Cir. 1999)).  A true threat does not require the speaker to actually intend to carry out the threat, nor does it require the maker of the threat to have the apparent ability to carry out the threat.  Viefhaus, 168 F.3d at 395–96.  The inquiry focuses on whether a recipient would reasonably consider that an actual threat has been made.  Id.  That objective inquiry is a fact-intensive one, including a consideration of the language itself, the context in which the statement is made, and any actions the recipient takes in response to the threat.  United States v. Magleby, 241 F.3d 1306 (10th

4

Cir. 2001) (the district court properly instructed the jury that it could consider the family's reactions, including the mother's refusal to sit on their front porch, the father's installation of a number of security measures, a discussion on moving to a new home, and the son's insistence on carrying a baseball bat with him at all times, when deciding whether the defendant intended to threaten).

This interpretation of the meaning of the term "threat" is consistent with the legislative history of FACE. Congress intended that a statement constitutes a threat when "a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates it as a serious expression of an intention to inflict bodily harm." S. Rep. No. 117, 103d Cong., 1st Sess. 22-23 (1993); see also Planned Parenthood of Columbia/Willamette, Inc. v. American Coalition of Life Activists, 290 F.3d 1058, 1075 (9th Cir. 2002). In American Coalition of Life Activists, the Court explained that it is not necessary that a defendant intend to or be able to carry out the threat, because the only intent requirement is that "the defendant intentionally or knowingly communicate the threat." 290 F.3d at 1075. It is the making of "the threat with intent to intimidate" that makes a defendant's conduct unlawful under FACE. Id. at 1077.

Defendant Dillard's letter constitutes a threat of force. First, the language itself is threatening. Defendant references Dr. Tiller, who was murdered because he provided abortions. See Dillard Letter. She warns that an explosive device may be placed under Dr. Means' car. Id. She further declares that, if Dr. Means does continue her plan to provide abortions, "[w]e will not let this abomination continue without doing everything we can to stop it." Id. Significantly, Defendant specifically involved herself in the statement of intent to take action against Dr. Means through the use of the word "we." Id.

5

Second, the context of the letter further leads to the conclusion that it is a true threat.  Dr. Tiller was the last physician to openly perform abortions in Wichita and was murdered less than two years ago.  See Means Decl. ¶¶ 4, 6.  Protestors have targeted Dr. Means' place of business, employees, and her home, and she has been the subject of flyers and emails urging those in the anti-abortion community to take action against her.  See Means Decl. ¶ 3.  Viewing Defendant's letter in the context of an historically explosive environment in Wichita surrounding abortion providers, it can only be interpreted as conveying a threat against Dr. Means' life.

Finally, Dr. Means has taken actions in response to receiving Defendant's letter, including having her car examined by a mechanic; parking only where her car is visible to her; installing a home alarm; staying overnight at different locations; varying her route to and from work and home; filing police reports; requiring new patients to provide ID; and looking for a more secure building in which to practice.  See Means Decl. ¶ 11.  These actions indicate that Dr. Means reasonably believed that Defendant's letter was meant as a threat.

Defendant's actions were intended to intimidate Dr. Means from providing reproductive health services -- the precise conduct that FACE is intended to prohibit. Defendant's letter is plainly a threat proscribed by FACE.  18 U.S.C. § 248(a)(1).  Such threats are not protected by the First Amendment.  American Coalition of Life Advocates, 290 F.3d at 1076; see also Schenck v. Pro-Choice Network of Western New York, 519 U.S. 357, 373 (1997); Madsen v. Women's Health Center, 512 U.S. 753, 774 (1994).

2.      **Dr. Means has been, and will continue to be, irreparably harmed by Defendant's FACE violations unless the Court issues a preliminary injunction.**

Irreparable harm is present where a plaintiff demonstrates "a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages." RoDa Drilling Co. v. Siegal, 552 F.3d 1203, 1210 (10th Cir. 2009) (internal quotation and citation omitted).  In making this determination, a court should assess "whether such harm is likely to occur before the district court rules on the merits." Id.

Defendant's clearly stated motive is to intimidate Dr. Means from providing reproductive health services, and in so doing she has placed Dr. Means in reasonable apprehension of bodily injury.  So long as Defendant is free to communicate additional threats to Dr. Means, Dr. Means will continue to be harmed.   Without a preliminary injunction, Dr. Means will be deprived of the opportunity to exercise her lawful right to provide reproductive health services free of fear for her personal safety.  Defendant's threats also have the potential to intimidate other clinic physicians, staff, and patients who may be aware of the threats.

The threat of additional intimidation by Defendant is substantial, given Defendant's prior course of conduct and stated intentions.  There is, therefore, clearly a likelihood of "irreparable" injury should this Court not issue an injunction.

3.      **The balance of the equities weighs strongly in favor of granting the preliminary injunction; granting injunctive relief will not result in any harm to Defendant.**

Defendant will not be injured in any manner if this Court issues a preliminary injunction. FACE prohibits only a very limited range of activities, namely, force, threat of force and physical obstruction. Planned Parenthood Association of Southeastern Pennsylvania, Inc. v. Walton, 949 F.

Supp. 290, 292 (E.D. Pa. 1996). A preliminary injunction will not prohibit Defendant from expressing her anti-abortion message, but for the exception of communicating directly with Dr. Means, a right she forfeited with her threatening conduct.

### 4.    Injunctive relief against Defendant is in the public interest.

Reproductive health services are protected by the Constitution and laws of the United States and the public will best be served by the granting of a preliminary injunction in the instant matter. A significant government interest lies in allowing unfettered access to health care facilities. See Madsen v. Women's Health Center, 512 U.S. 753, 767-68 (1994); see also Independent Living Center of Southern California, Inc. v. Maxwell-Jolly, 572 F.3d 644, 659 (9th Cir. 2009) (finding district court did not abuse discretion in giving strong weight, as part of preliminary injunction analysis, to the public interest in ensuring access to health care). Because Dr. Means seeks to open a health care facility, and will continue to be intimidated and made fearful of doing so if this Court does not issue a preliminary injunction, the requested preliminary injunction is plainly in the public interest.

## II.    CONCLUSION

For the foregoing reasons, this Court should issue a preliminary injunction prohibiting Defendant, Angel Dillard, from contacting Dr. Mila Means via letter, email, phone call, or any other form of communication; enjoining Defendant and her representatives, agents, employees and any others acting in concert or participation with her, from coming within 250 feet of Dr. Means, her home, car, and place of business; and enjoining Defendant and her representatives, agents,

employees and any others acting in concert or participation with her, from violating the Freedom of

Access to Clinic Entrances Act.

Respectfully submitted,

BARRY R. GRISSOM                              THOMAS E. PEREZ
United States Attorney                        Assistant Attorney General
District of Kansas                            Civil Rights Division

                                              JONATHAN SMITH
                                              Chief
                                              Special Litigation Section


                                              s/Julie K. Abbate
                                              JULIE K. ABBATE
                                              Deputy Chief
                                              Special Litigation Section

s/Barry R. Grissom                            s/Aaron Fleisher
BARRY R. GRISSOM                              AARON FLEISHER
United States Attorney                        Trial Attorney
For the District of Kansas                    United States Department of Justice
500 State Ave., Suite 360                     Civil Rights Division
Kansas City, KS 66101                         Special Litigation Section
Kansas Bar No. 10866                          950 Pennsylvania Ave., N.W.
(316) 269-6481                                Washington, DC  20530
(316) 269-6484 (fax)                          (202) 514-6255
                                              (202) 514-6903 (fax)
                                              aaron.fleisher@usdoj.gov