IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

United States of America,

        Plaintiff,

vs.                                   Case No. 11-1098-JTM

Angel Dillard,

        Defendant.

MEMORANDUM AND ORDER

This is an action by the government alleging that the defendant violated the Freedom of Access to Clinic Entrances (FACE) Act, 18 U.S.C. § 248 by sending a threatening letter to Dr. Mila Means, a physician undergoing training to provide abortion services. The court has previously denied the government's request for injunctive relief (Dkt. 16), and denied Dillard's motion to dismiss the action. (Dkt. 30).

Four motions are before the court. The government has moved for a trial by jury and to dismiss Dillard's counterclaim. Dillard has moved to dismiss the action or for summary judgment, on the grounds that Dr. Means is not presently providing abortions services. Dillard also moves to amend her complaint to restate her counterclaim. For the reasons stated herein, the court grants the motions of the government, and denies the motions of the defendant.

*Trial by Jury*

The government has moved for a trial by jury. (Dkt. 33). The government agrees that this request was not timely under Fed.R.Civ.Pr. 38(b), which provides that a party seeking trial by jury should serve its written demand "no later than 14 days after the last pleading directed to the issue is served," but emphasizes the strong preference accorded to trials by jury, and argues that there remains sufficient time before trial to remove any potential prejudice to the defendant.

The defendant argues that the court should deny the request, and gives particular emphasis to Judge Lungstrum's decision in *School-Link Technologies v. Applied Resources*, 471 F.Supp.2d 1101 (D. Kan. 2007) to strike a late request for jury trial, but the court finds that case distinctive. In that case, the court stressed that the defendant had waited 18 months after the initial round of pleading before filing its request for jury trial, the defendant offered no rationale for the delay, and indeed had not even filed a response to the plaintiff's motion to strike. Most importantly, the court stressed that even with the delay, it "would ordinarily be inclined to grant a belated request for a jury trial, " but that the case involved complex claims relating to transaction involving the sale of computer hardware. 471 F.Supp.2d at 1121.

> This is not a negligence case or an employment discrimination case where the jury can be fairly easily tasked with its role as the finder of facts. Instead, this is a commercial transaction which involves a multitude of mixed questions of law and fact. Many of the issues involve complex, interrelated, and potentially confusing facts, legal standards, and remedies.

*Id.*

The present case, by contrast, involves a delay much shorter in the length,[1] and ultimately turns on a classic factual question of whether a given communication is a true threat of violence. Courts typically resolve the existence of a true threat as a question of fact, resolved through the use of a jury verdict. *See, e.g., United States v. White*, 640 F.3d 498, 512 ("[t]he question of whether White's communications ... were true threats ... is a jury question").

Lastly, the defendant argues that "[t]here is probably ... no issue more emotionally charged and divisive than the abortion issue," and that as a result the matter "is especially ill-suited for a jury." (Dkt. 37, at 4).

The court disagrees. First, the defendant's concern may be appropriately addressed by careful *voir dire* and jury instruction, rather than by disregarding the strong preference for trial by jury. Notably, while numerous FACE decisions reflect the existence of a trial by jury, *see e.g., Planned Parenthood of Columbia/Willamette v. American Coalition of Life Activists*, 290 F.3d 1058 (9th Cir. 2002) (finding jury verdict supported by substantial evidence), defendant has not cited a single case holding that the issue of abortion is so incendiary that the matter must be removed from a jury's consideration. Finally, defendant identifies no prejudice arising from the delay itself.

"[A]bsent strong and compelling reasons to the contrary, a district court should exercise its discretion under Rule 39(b) and grant a jury trial." *Nissan Motor Corp. in U.S.A. v. Burciaga*, 982

---

[1] The government filed its request for a jury trial nine months after defendant's Answer and Counterclaim filed on May 24, 2011 (Dkt. 20), half the delay shown in *School-Link*. Moreover, Judge Lungstrum measured the delay in *School-Link* from the "completion of the parties' initial round of pleadings." 471 F.Supp.2d at 1120. In this case, the defendant voluntarily dismissed that counterclaim on July 1, 2011 (Dkt. 29) before any government response, and reasserted it by her Amended Answer on April 16, 2012 (Dkt. 46). The government promptly moved to dismiss it on May 4, 2012. (Dkt. 54). The government's motion for a jury trial therefore actually precedes the completion of the briefing on the claims and counterclaims in the action.

F.2d 408, 409 (10th Cir.1992) (per curiam). This is a high standard, and the court finds that it is not met here, notwithstanding the dilatory nature of the government's motion.

The court finds no prejudice arising from the delay. Trial is scheduled for February 5, 2013, and the parties have ample opportunity to prepare for a jury trial. No strong or compelling reason exists to justify removing from the hands of the jury the resolution of the facts of the case.

*Government's Motion to Dismiss*

Dillard has counterclaimed against the government, alleging that it has violated her rights under the First, Fourth, Fifth, and Fourteenth Amendments, and that it has interfered with her access to a religious institution in violation of the Freedom of Access to Clinic Entrances Act ("FACE"), 18 U.S.C. § 248. The government has moved to dismiss Dillard's counterclaims for a lack of subject matter jurisdiction, as well as failure to state a cause of action.

The government argues that Dillard fails to cite any grounds for finding a waiver of sovereign immunity in her Answer. It contends that the counterclaim cannot be grounded on the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1); 2671-2680 (2006), as that Act provides no authority for a waiver of immunity as to federal constitutional tort claims, *FDIC v. Meyer*, 510 U.S. 471, 478 (1994), or for claims of violations of state constitutional rights. *Franklin Savings v. United States,* 180 F.3d 1124, 1139 (10th Cir. 1999). Further, it argues, nothing in FACE itself shows any intent to waive sovereign immunity, and suggests that at most Dillard might assert for malicious prosecution, but that any such claim would be unripe prior to the resolution of this action.

The government acknowledges that while Dillard might otherwise be able to assert her non-damage claims under the Administrative Procedures Act (5 U.S.C. § 702), the counterclaim should

still be dismissed because it is pled in only the most conclusory fashion. Accordingly, it argues that the counterclaim fails to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (claim must provide "more than labels and conclusions"); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*Twombly* standard requires claim contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

Further, to the extent that Dillard does explain her claim — that the proposed barrier zone might prevent her from attending a church within that zone — the government argues that Dillard cannot premise any claim under FACE, as the two supposedly relevant provisions are inapplicable. Section § 248(d)(1)[2] merely provides a rule of construction for the interpreting the acts prohibited in the operative portion of the Act; it does not authorize a separate right of action. Section § 248(a)(2) prohibits an infringement of First Amendment freedoms "by force or threat of force or by physical obstruction." The government has here commenced a civil action under FACE, an action which is explicitly authorized by FACE, and which is actively overseen by this court. There is no credible allegation that the United States has threatened violence against Dillard or has physically obstructed her. If the government secures its desired result, it will be through the rule of law rather than by the methods condemned in Section § 248(a)(2). Further, any claim under the First Amendment would be premature, since the court can simply tailor any resulting remedy to preserve any First Amendment rights for the plaintiff.

Dillard responds by asserting several different grounds for inferring a waiver of sovereign

---

[2] "Nothing in this section shall be construed to prohibit any expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment to the Constitution."

immunity: (1) the Religious Freedom Restoration Act (RFRA) (42 U.S.C. § 2000bb-1); (2) the Declaratory Judgment Act (28 U.S.C. §§ 2201, 2202); (3) the Little Tucker Act (28 U.S.C. § 1346(a)(2)); (4) under 28 U.S.C. § 1331 and 1367; and (5) under the Administrative Procedures Act (5 U.S.C. § 702).[3]

The court finds that leave to amend should be denied, and the counterclaims dismissed. While "RFRA provides a statutory claim to individuals whose religious exercise is burdened by the federal government," *United States v. Wilgus*, 638 F.3d 1274 (10th Cir. 2011), it does not waive sovereign immunity as claims for monetary damages. *Oklevueha Native American Church of Hawaii, Inc. v. Holder*, 676 F.3d 829 (9th Cir. 2012); *Webman v. Federal Bureau of Prisons*, 441 F.3d 1022 (D.C.Cir.2006). In addition, in resolving a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA) — which contains an authorization for action seeking "appropriate relief" identical to RFRA — the Supreme Court has held the United States had not waived sovereign immunity as to claims for monetary damages, as the language "is not the unequivocal expression of state consent [to waiver] that our precedents require." *Sossamon v. Texas*, 131 S.Ct. 1651, 1659 (2011).

> The defendant's reliance on Tucker Act is misplaced, since the Act
>
> does not create any substantive right enforceable against the United States for money damages. A substantive right must be found in some other source of law, such as the Constitution, or any Act of Congress, or any regulation of an executive department. Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States, and the claimant must demonstrate that the source of substantive law he relies upon can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.

---

[3] Dillard has also moved for leave to assert these additional grounds by amendment.

*United States v. Mitchell*, 463 U.S. 206, 216-17 (1983). Courts have repeatedly held that the Act does not waive sovereign immunity as to constitutional tort claims. *Calhoun v. United States*, 98 Fed.Appx. 840, 842 (Fed.Cir. 2004) ("neither constitutional torts nor due process violations are within the Court of Federal Claims' jurisdiction under the Tucker Act"); *Hamlet v. United States*, 63 F.3d 1097, 1107 (Fed.Cir. 1995). And Dillard has failed to show any provision in FACE explicitly or even implicitly authorizing a right of action for damages.

Dillard has failed to demonstrate that the court has jurisdiction to hear her claims under the Declaratory Judgment Act. That Act "does not itself confer jurisdiction on a federal court where none otherwise exists" *Amalgamated Sugar Co. v. Bergland*, 664 F.2d 818, 822 (10th Cir. 1981). The Declaratory Judgment Act does not itself confer jurisdiction and contains no express waiver of sovereign immunity.

Dillard also cites 28 U.S.C. § 1331, which establishes federal question jurisdiction, but that provision contains no waiver of sovereign immunity. *Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005).

The Administrative Procedures Act (APA), 5 U.S.C. § 702, Dillard does provide a basis for Dillard's declaratory and injunctive relief claims. *See United States v. Vasquesz*, 145 F.3d 74 (2nd Cir. 1998) (rejecting sovereign immunity argument and finding APA authorized non-monetary counterclaims by abortion protestor charged with violating FACE).[4]

But while the court would have jurisdiction to address Dillard's non-monetary claims under the APA, dismissal remains appropriate because the defendants's conclusory claims of violations

---

[4] The government has acknowledged that Dillard the Administrative Procedures Act might provide a vehicle for Dillard to assert her claims. (Dkt. 84, at 7).

of her religious rights fail to state a claim on the merits. The defendant can be found guilty of a violation of FACE only if the jury determines that her letter constituted a "true threat" against Dr. Means. If it was a true threat, the communication has no First Amendment protection, and the government's institution of the present action does not substantially burden Dillard's legitimate rights under RFRA. 42 U.S.C. § 2000bb-1(a)). Further, any award of injunctive relief would be simultaneously justified by the government's compelling interest in protecting access to reproductive health services, and narrowly tailored by this court to use the least restrictive means of furthering that interest. *See Riely v. Reno*, 860 F.Supp. 693, 709 (D. Ariz. 1994).

Similarly, the current and proposed counterclaims fail to present any basis for the court declaring that the present action violates Means's constitutional rights. The court has previously determined that the government has presented a potential violation of FACE which justifies a trial on the merits.[5] That is, it concluded that there was a colorable basis for the present action. True threats have no constitutional protection. Further, the future imposition of any actual injunctive relief against Dillard will arise only on the jury's determination that she issued a true theat of violence against Means, and only following the active review and judgment of this court.

Finally, Dillard's counterclaim cannot survive to the extent that it asserts that the prosecution violates her rights under FACE. As discussed above, the relevant portions of FACE only supply a rule of construction for interpreting the nature of the alleged true threat, and prohibit only acts of

---

[5]The defendant argues in her Reply in support of her Motion to Amend that her First Amendment violation claims require investigation and discovery, citing in part "the preliminary determination by this court ... that defendant's letter did not constitute a true threat and was protected speech." (Dkt. 101, at 11). This is inaccurate. The court found that the government had not met its heavy burden of showing, for purposes of injunctive relief, that the letter is necessarily a true threat. At the same time, the court rejected Dillard's request to dismiss the action, finding that a rational fact-finder could indeed view the letter as a threat of violence.

physical or threatened violence. Dillard has no claim under FACE for the government's institution of the present action.

The court accordingly grants the government's Motion to Dismiss the counterclaims, and further denies as futile her request for leave to amend and reframe her counterclaims, given that they would in any event be subject to dismissal. *See Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Services*, 175 F.3d 848, 859 (10th Cir. 1999). In any event, the request for leave to amend would be denied as untimely. *See Minter v. Prime Equipment*, 451 F.3d 1196, 1206 (10th Cir. 2006) (leave to amend may be denied based on undue delay, with the court weighing the length of the delay, the existence of excusable neglect, and prejudice to the opposing party). Here, the delay is substantial (over a year after the defendant first filed her counterclaim (Dkt. 23), before voluntarily dismissing it), and the defendant has offered no rationale for the delay (other than trying to avoid the government's motion to dismiss).

The court accordingly finds that, with the exception of the Administrative Procedure Act, the defendant has failed to show any basis for the court's jurisdiction over her current or proposed counterclaims. Further, the court finds that the none proposed counterclaims do not state a claim for relief on the merits, and are properly dismissed.

*Defendant's Motion to Dismiss*

The defendant moves alternatively for dismissal or summary judgment, contending that the action cannot be maintained under FACE as Dr. Means is only now undergoing training to provide abortion services. Her motion places strong emphasis on Dr. Means's testimony at the earlier evidentiary hearing.

9

Dr. Means testified that she does not currently provide abortions in her private practice, has never performed them in her current facility, and has no set date in which she will provide abortion services to the general public. She has performed abortions as part of her background training, but she has no patients scheduled for abortion services in any facility. She does not know if Dillard knew that she has performed abortions as a part of her training. She agrees that Dillard's letter indicates "[t]hat she is concerned over what you are planning to do in the future." (Tr. 59).

An existing injunction prohibits abortion services in her current facility, and Dr. Means is currently looking for another facility in which to provide those services. Dr. Means believes that it is important for her to have more training before she offers abortion services generally. (Tr. 74). She anticipates completing her training at the same time as she locates a new building to work in.

Dillard argues that FACE must be interpreted narrowly "so that it does not chill speech or regulate more speech than necessary to meet the statutory goals." (Dkt. mem, at 2). Specifically, she suggests that FACE should be interpreted to apply only if the targeted health services provider is actively providing abortions in an ongoing fashion. The United States argues that Dillard is barred from asserting the defense here under Rule 12(b), because she did not advance it in her Answer or Amended Answer, and under Rule 12(g)(2) because it was not raised in Dillard's earlier Motion to Dismiss.

The court denies the defendant's motion to dismiss or for summary judgment. First, even if the defendant's legal argument was valid, the facts before the court do not support the relief sought. There is evidence that Dr. Means currently provides reproductive health services in general. In addition, she specifically denied during cross examination the suggestion that she did not perform abortion services, stating "Well, in training, with someone over your shoulder you actually do

perform abortions." (Tr. 59). She also expressed concern that the defendant may have been motivated by her present training as opposed to her future plans: "I can't read between the lines and know how offended she may be about the abortions I do as part of my training." (Tr. 60).

Second, the court finds that the statute is properly read to apply to true threats directed at discouraging physicians from completing training for the provision of abortion services. While the decisions cited by the defendant do discuss some elements of the requirements of FACE, none do so in the context of the "present tense" argument she advocates here. *See Sharpe v. Conole*, 386 F.3d 482, 484 (11th Cir. 2004) (FACE requires proof that "the intent to injure, intimidate, or interfere existed because of the motivation specified by the statute"); *Raney v. Aware Woman Center for Choice:, Inc.*, 224 F.3d 1266, 1268-9 (11th Cir. 2000) (holding that FACE does not extend to "unregulated volunteer counselors who are not attached to recognized providers of reproductive healthcare"); *United States v. Operation Rescue Nat.*, 111 F.Supp.2d 948, 953 (S.D.Ohio 1999) (observing generally that FACE applies to threats where to a "person is or has been obtaining or providing reproductive health services").

More importantly, the defendant's argument that "[t]he use of the present tense throughout the act and its definitions is neither coincidental nor meaningless," (Dkt. 55, at 6) rests on a flawed premise. The Act does not always speaks in the present tense; 18 U.S.C. § 248(c)(1) provides protection for any person "providing or ***seeking to provide***, or obtaining or seeking to obtain, services in a facility that provides reproductive health services." (Emphasis added).

Thus, courts have recognized that violence directed at thwarting the future provision of abortion services falls within the Act. *See, e.g., Lotierzo v. A Woman's World Med. Ctr.*, 278 F.3d 1180 (11th Cir. 2002) (Act applies to violent threats made against a person who "has sought or

provided, or is seeking or providing, or will seek or provide, reproductive health services"); *New York ex rel. Spitzer v. Cain*, 418 F.Supp.2d 457, 476, 477 (S.D.N.Y.,2006) (Act applies to threats against a person "seeking, obtaining, or providing, or had obtained or provided, ***or might*** obtain or ***provide, reproductive health services***") (emphasis added; quotation omitted).

Further, as the government points out, 18 U.S.C. § 248(c)(1) only governs availability of civil remedies to private persons. Section 248(c)(2) separately provides for a right of action by the Attorney General whenever "any person ... is being, has been, or may be injured" by conduct prohibited by the Act. The prohibitions of the Act include threats of violence directed at "any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services." 18 U.S.C. § 248(a)(1). Which may be emended to clarify FACE prohibits violent threats made "in order to intimidate [a] person ... from ... providing reproductive health services." There is no requirement that the person be currently providing abortion services; threats designed to thwart the future provision of reproductive health services fall within the scope of the Act.

Accordingly, the court reiterates its conclusion at the previous hearing in this matter, where it observed that application of the Act turns on the existence of a true threat to thwart the provision of abortions services, and

> has nothing to do with the facility itself but whoever by force or threat of force or by physical obstruction intentionally injures, intimidates, or interferes with, or attempts to injure, intimidate, or interfere with any person because of that person — because that person is or has been, or in order to intimidate such person or any other person or any class of persons from obtaining or providing reproductive health services. That statute, as I read it, does not require that somebody in fact has been providing those services, or that they have a facility for doing it, ... so all of the business about whether she had a place, whether she was looking for it, is totally irrelevant to the issue that I am looking at here.

12

(Tr. 116-117).

IT IS ACCORDINGLY ORDERED this 6th day of August, 2012, that the government's Motions for Jury Trial (Dkt. 33) and to Dismiss (Dkt. 52) are granted; defendant's Motions to Dismiss or for Summary Judgment (Dkt. 54) and for Leave to Amend (Dkt. 69) are denied.

s/ J. Thomas Marten<br>J. THOMAS MARTEN, JUDGE