# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 11-1098-JTM-KGG |
| | ) |
| ANGEL DILLARD, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM & ORDER
## GRANTING PLAINTIFF'S MOTION TO COMPEL

The Court now considers Plaintiff's Motion for an Order Compelling Defendant to Answer Certain Interrogatories, Requests for Admission, and Requests for Production. (Doc. 128.) The disputed discovery requests information concerning Defendant's relationship and communications with Scott Roeder, an inmate convicted of the murder of a Wichita physician who provided abortion services, with another inmate who alleges that the Defendant solicited his participation in unlawful activities against abortion providers, and information concerning other communications between Defendant and jail inmates. These communications occurred through a jail ministry program. Defendant objects that the requested information is privileged under Fed.R.Evid. 501 and the clergy-communicant privilege. Because Defendant is not clergy, the privilege is

inapplicable and Plaintiff's motion is **GRANTED**.

Defendant's original responses to the disputed discovery included a variety of objections which Defendant now claims she "maintains," but does not brief or support in her response to this motion. (*See* Doc. 136.) Those objections are, therefore, waived.[1] Additionally, the response indicates that Defendant maintains objections only to Interrogatories 2, 9, 24 and 24 which, she asserts, seek "confidential information within the clergy-communicant privilege." The Court understands her discovery objections to those interrogatories to be limited to that issue. The Court understands her objections to other discovery requests identified in the motion to be withdrawn and thus **GRANTS** the motion to compel responses to those requests on that basis.

Defendant visited inmates at the Sedgwick County jail through a non-profit religious ministries program with the mission of "ministering to inmates as they deal with emotional, physical and spiritual needs." (Doc. 136, at 2.) Defendant was granted access to inmates by the jail through that program, and claims that she signed an agreement to honor the "confidentiality" of inmates' communications. *Id*. Defendant does not claim that she is a member of the clergy. Defendant also does not dispute Plaintiff's claim that the information sought is relevant discovery,

---

[1] Defendant also purports to preserve trial evidentiary objections, which are not at issue in the present motion.

but objects only on the basis of privilege.

The burden of establishing a privilege is on the asserting party. *Lewis v. UNUM Corp. Severance Plan*, 203 F.R.D. 615 (D. Kan. 2001). Additionally, evidentiary privileges which restrict access to potentially relevant evidence are strictly construed. *Trammel v. United States*, 445 U.S. 40, 50-51 (1980).

The present case is an action under federal law. Thus, federal, rather than state, law provides the rules governing privilege. Federal Rule of Evidence 501 does not create a clergy-communicant privilege, but provides that in such cases the "common law – as interpreted by United States courts in the light of reason and experience – governs a claim of privilege." There is a dearth of mandatory authority from the Supreme Court, this Circuit, or this District holding that the clergy-communicant privilege exists. However, it has been recognized in dicta as a privilege which "recognizes the human need to disclose to a spiritual counselor, in total and absolute confidence, what are believed to be flawed acts or thoughts and to receive priestly consolation and guidance in return." *Trammel*, 445 U.S. at 51. The privilege is a long-standing tradition in American courts, is recognized in Kansas state courts (K.S.A. § 60-429), and the parties have cited ample case law from other jurisdictions which generally recognize the privilege. Plaintiff does not take issue in this case with the general existence of the privilege. Neither does this Court.

There is little authority that the privilege is founded in the right to free exercise of religion guaranteed by the First Amendment to the United States Constitution. Presumably, however, the classic application of the privilege, to communications between a priest and penitent during confession, is supported partly in the protection of that rite from governmental interference. However, there is no law cited by Defendant which compels the Court to recognize a constitutional privilege beyond the traditional privilege. Defendant has not presented evidence that responding to the discovery requests would unconstitutionally chill the exercise of her religious rights or of those of the jail inmates. *See* **In re Motor Fuel Temperate Sales Practices Litigation**, 641 F.3d 470 (10th Cir. 2011) (claim of privilege based on claim of chilling of First Amendment rights requires evidence). The general assertion that confidentiality is important to counseling sessions is not, in and of itself, enough.

The central question is whether the privilege applies when the defendant is not a member of the clergy, but is a lay counselor providing religious counseling or other support through a religious program. Defendant has cited one case for the proposition that the privilege may attach to such communications. In the Viet Nam War-era case of **In Re Verplank**, 329 F.Supp. 433 (D.C. Cal. 1971), a District Court in California held that the privilege attached to communications by the staff members of an ordained minister who were providing "draft" counseling. The

Court analogized the communications to those between a client and an attorney's staff, and found that the communications were intended to assist the clergyman in providing counseling. This Court does not endorse the opinion in *Verplank* for the reasons stated in the next paragraph. That opinion is inapplicable, however, because the communications in the present case were not occurring on behalf of a specific member of the clergy to assist that clergy member's counseling.[2]

There is no other support for a claim that the privilege traditionally extends beyond communications with clergy, and this Court disagrees with the opinion in *Verplank*.[3] The same First Amendment concerns urged by Defendant in support of the privilege counsel against its expansion beyond clergy. This issue is one in which the Court must protect the free exercise of religion, as guaranteed by the First Amendment, without getting involved in defining religious practice, as prohibited by the same Amendment's establishment clause. Limiting the privilege to clergy, a classification within the exclusive purview of the church, promotes the essential purpose of the rule and keeps the Court out of the church's affairs.

---

[2] Evidence that the "counselors" were acting under the "supervision" of clergy would not change this result. There is no evidence here that the communications were done on behalf of (and thus communicated to) a clergy member, which would be required under *Verplank*.

[3] The Courts have struggled with the application to Catholic nuns, but have extended the privilege when such were performing priestly functions. *Eckmann v. Bd. of Educ. of Hawthorne School District No. 17*, 106 F.R.D. 70, 73 (E.D. Mo. 1985). Here the Defendant does not claim that she holds any status in which she performs clerical functions.

Extending the privilege to "counselors" and other lay members would require the Court to undertake the constitutionally-hazardous task of analyzing whether counseling was or was not "religious" – and possibly even balancing whether the religious component of a communication is substantial enough to require protection.[4] The only other alternative would be to simply accept as unassailable any claim of qualification, thus hobbling the Court's power to control the application of its own rules.

Defendant argues that the privilege applies not only to clergy, but also to "an individual reasonably believed so to be by the person consulting him," citing *In re Grand Jury Investigation*, 918 F.2d 374, 385, n. 13 (3rd Cir. 1990). Defendant would expand this language into a rule that would create a privilege whenever either participant believed the communication would be confidential. However, this language, from a proposed but not enacted federal rule, plainly covers only the situation where the lay person reasonably believed the other to be a member of the clergy. There is no evidence of that in the present case. It is also impossible to find reasonable an expectation that non-clergy communications would be privileged when Kansas state law does not protect such communications in state

---

[4]Plaintiff argues that the Court should reject the claim of privilege because there is no evidence the Defendant completed the jail's forms for acting in a ministerial capacity, and that when she visited Mr. Roeder she logged in as a "friend" rather than a "minister." The Court's ruling makes an analysis of the Defendant's activities unnecessary.

proceedings.  *See* K.S.A. 60-249 (limiting the privilege to clergy).

The objections to the discovery requests identified in the motion are overruled and the motion to compel is **GRANTED**.  Defendant shall provide supplemental responses to Plaintiff in compliance with this order within **two (2) weeks** of the filing of this Order.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas, this 7th day of March, 2013.

    s/ KENNETH G. GALE
Kenneth G. Gale
United States Magistrate Judge